# Wylie's and Quail's Appeal.

S. assigned for the benefit of his creditors all his estate, real, personal and mixed. At the date of the assignment he was entitled to a legacy from a certain estate. Among the assets collected by the assignee was a portion of this legacy. The assignee filed his account, including this amount, and his report was confirmed, and an auditor appointed to distribute the fund among creditors. Before the auditor M. claimed the amount collected from the legacy by virtue of a prior agreement with S., made before his assignment, by which the money from the legacy was to be appropriated, as soon as collected, to the payment of two notes held by a certain bank upon which M. was surety. This claim the auditor and court allowed. *Held,* that this was error; that the fund in court was, by the decree of the court, appropriated to creditors, and the auditor was ordered to distribute it to them, and he had no authority to pass upon the rights of an adverse claimant and award any portion of the fund to him. *Held, further,* that the agreement did not constitute an equitable assignment of the legacy; that it was only an agreement of the debtor to appropriate the proceeds in relief of his surety, but no such direct appropriation of the claim itself to the surety as would authorize a direct payment to him.

November 19th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON and TRUNKEY, JJ. STERRETT and GREEN, JJ., absent.

[Wylie's and Quail's Appeal.]

Appeal from the Court of Common Pleas, of *Washington county:* Of October and November Term 1879, No. 258.

Appeal of Robert Wylie and Mary C. Wylie, administrators of the estate of William Wylie, deceased, and William Mc. Quail, from the decree of the court dismissing the exceptions to the report of the auditor appointed to distribute the funds in the hands of the assignee of John E. and Julius L. Slemmons.

The case is stated in the facts set forth in the opinion of this court, and the following portion of the opinion of the court below, Hart, P. J., in overruling the exceptions to the auditor : " Money was received by the assignee, on account of the legacies, to the amount of $174.60. That money is to be regarded as having been specifically appropriated by the assignors, in relief of their surety, prior to the assignment. An assignee takes the property of his assignor subject to all agreements and equities subsisting at the date of the assignment. In Campbell's Appeal, a late case from this county, 20 Pitts. L. J. 101, where the assignor, being indebted to his attorneys, agreed with them that they might retain the amount of his indebtedness to them out of the proceeds of a certain note then left with them for collection, and afterwards made an assignment for the benefit of creditors, it was held that the assignee took subject to the agreement, and could claim only the balance of the proceeds of the note after deducting the attorneys' charges, including the assignor's prior indebtedness to them. Here, it may be said, that by her agreement with the assignors, the surety left the collection of the legacies to them, and trusted to them to pay over the proceeds, to her relief upon the notes in the bank. And that circumstance, perhaps, would prevent the agreement from operating as a complete equitable assignment of the fund, so as, for instance, to place the money beyond the reach of an attaching creditor. But no question of that kind has arisen. The money has been received by the assignee. Shall it not be applied in good faith, as the assignors had agreed, for a valuable consideration, that it should be applied ? It seems to me that the auditor has solved this question correctly, and has properly awarded the money to Mrs. McGill."

*John W. & A. Dornan,* and *Dougan & Todd,* for appellants.—To sustain an equitable assignment or equitable lien, there must be an appropriation of the fund of such a nature as to confer a complete and present right on the assignee to collect it, either at once or at some future time, and an entire abandonment by the assignor of any right to collect, appropriate or control it. A mere promise by a debtor to pay his creditor out of any certain fund when he receives it, does not give the debtor such a specific lien on the fund as can be enforced: Rogers *v.* Hosack's Exr., 18 Wend. 319 ; Christmas *v.* Russell, 14 Wall. 70 ; Trist *v.* Child, 21 Id.

447 ; Gibson *v.* Stone, 43 Barb. 285 ; Hoyt *v.* Story, 3 Id. 262 ; First Nat. Bank of Mt. Joy *v.* Gish's Assignees, 22 P. F. Smith 13 ; Leading Cases in Equity, 3d Am. ed. 361. Neither the auditor nor the court had power to award any part of the amount shown by the assignee's account to be in his hands for distribution, to a party claiming adversely to the trust.

The assignment conveyed all the estate of the assignors in trust for the benefit of their creditors. Under this power the assignee collected the assets of the estate, and his account confirmed by the court, ascertained the amount for distribution under the assignment. The auditor was appointed to distribute the amount so ascertained " among the creditors." His authority was limited, by the terms of his appointment, to this special purpose. He could not go behind the decree confirming the account to inquire whether the balance was correct or not : Wither's Appeal, 4 Harris 152 ; Appeal of Benson, Phelps & Way, 12 Wright 159 ; Gossner's Est., 6 Whart. 401 ; Okie's Appeal, 9 W. & S. 174 ; Jefferis's Appeal, 9 Casey 39.

No appearance nor paper-book for appellees.

Mr. Justice GORDON delivered the opinion of the court, January 5th 1879.

John E. and Julius L. Slemmons, by deed dated March 24th 1877, assigned, for the benefit of their creditors, to W. A. Mickey, all their estates, real personal and mixed.

At the date of the assignment the assignors were entitled to certain legacies from the estate of William Slemmons, late of Wooster, Ohio, deceased. Among other assets of the assigned estate, which were collected by Mickey, were $174.60 received on account of these legacies. The assignee filed an account, including, among other items, the amount received, as above stated, from the Slemmons estate, which was duly confirmed January 13th 1878, and an auditor appointed to make distribution of the fund among creditors.

Before the auditor appeared the appellee, Mrs. M. J. McGill, who claimed that the $174.60 collected from the estate of William Slemmons by the assignee, belonged to her by virtue of a parol agreement with the assignors, made before the assignment, by which the money coming from the legacies, above mentioned, was to be appropriated as soon as it was collected, to the payment of two notes held by the Washington Savings Bank, upon which she was surety.

The claim thus made was allowed by the auditor, and his action approved by the court.

We think this was error, for two reasons : 1. The fund in court was, by the decree of the court, appropriated to creditors ; the

auditor was ordered to distribute it among creditors, and he had no authority to pass upon the rights of an adverse claimant and award this fund, or any part of it, to such claimant. The decree definitely fixed the rights of the creditors to have the money in court divided among themselves, and, as long as that decree stood, neither the auditor nor the court could turn it over to some other party. If authority is wanting, in support of a proposition so obvious in itself, it will be found in Okie's Appeal, 9 W. & S. 156, and Jefferis's Appeal, 9 Casey 39.

2. There was no actual assignment of the legacies to Mrs. McGill. There was but an agreement to pay the money, which might be received from them, on the notes for which she was surety, and to this agreement the executor of William Slemmons was not a party. John E. Slemmons testifies: "The money from Ohio was to be paid at the savings bank on these notes when I received it from the executor." Julius L. Slemmons says: "I was to pay the money I received from the executors in Ohio to the savings bank to be applied on my note. I made this agreement with the bank when I got the money. There was no arrangement made that my sister was to collect the money. I was to receive it and pay it to the bank." This does not constitute an equitable assignment of the claim, for there is here only the agreement of the debtor to appropriate the proceeds in relief of his surety, but there is no such direct appropriation of the claim itself to the surety as would authorize a direct payment by the executor to her.

In the case of the Bank v. Gish's Assignees, 22 P. F. Smith 13, it was held, that where B. drew a check on the bank before his assignment, which was not presented until after, it was not an appropriation to the payee, and that the money remaining in the bank passed to B.'s assignees. This is a stronger case than the one in hand, for the check authorized a direct payment to the payee, had it been presented in time. But Mrs. McGill had nothing to present to the executor of William Slemmons's estate to show her right to the fund in question; she had but an oral promise that the fund, when received, should be applied to the notes, but before it was received the power of those who had so promised had passed to their assignee, and hence, the promise or agreement fell from a want of power on part of the promisors to execute it.

The decree of the court below is now reversed and set aside at the costs of the appellee, and it is ordered that the whole fund now in court or in the hands of the assignee, as the case may be, be distributed among the creditors of the assignors as their rights may appear.